## Rishell *versus* Rishell.

*Right of widow to benefit of Exemption Law, as against lien-creditors of husband.*

A widow's right to land set apart to her under the 5th section of the Act of 14th April 1851, with the approval of the Orphans' Court, is postponed to the lien of a judgment against her husband, which was obtained before the Act of Assembly was passed, and continued a lien until the husband's death.

ERROR to the Common Pleas of *Indiana county.*

This was a *scire facias* by Elizabeth Rishell against the executrix of G. W. Rishell, with notice to the widow and heirs of deceased, on a judgment held by her against him.

The facts of the case were these :—Prior to the passage of the Act of 14th of April 1851, commonly called "The Widows' Exemption Law," Elizabeth Rishell had obtained a judgment in the

Common Pleas of Indiana county against G. W. Rishell for $240, which was duly revived from time to time. He died in 1858, and this *sci. fa.* to revive it was issued to No. 15, December Term 1861, against his executrix, with notice to his widow and heirs. G. W. Rishell died seised of fifty-six and three-fourth acres of land, situate in Canoe township, Indiana county, which was all the real estate he had owned. The plaintiff's judgment was a lien against it prior to the passage of the Exemption Statutes of 1850 and 1851; which lien was duly continued till the issuing of the present *sci. fa.*

After the death of G. W. Rishell, his widow (who was his executrix and had declined to take under his will) elected to retain the fifty-six and three-fourth acres of land, under the provisions of the Act of 14th of April 1851, which was appraised and set apart to her; and when this cause was set down for trial she by her counsel filed a special plea to that effect. The plaintiff replied, "that the debt for which the original judgment upon which this *sci. fa.* is founded, was contracted and incurred prior to the passage of the Act of April 14th 1851, pleaded as aforesaid by the said defendants; and that it was in the form of a judgment, and a subsisting and specific lien against all the real estate of G. W. Rishell, deceased, at and prior to the passage of the aforesaid Act of 14th of April 1851." To this the defendants demurred, and the plaintiff joined in the demurrer. On the 1st of October 1864, the court entered "judgment on the demurrer in favour of the widow as to her rights under the Exemption Law, securing to her the land," &c.; which was the error assigned in this court.

*J. D. McClaren* and *H. W. Weir*, for plaintiff in error.—The question raised by this record is, does "the Widows' Exemption Law" of the 14th April 1861, operate to divest the lien of judgments existing at and prior to its passage? In other words, is it retroactive as to judgments? Baldy's Appeal, 4 Wright 328, does not decide it. That was a case of simple contract debts, and the point decided was, that "the Act of 1815 is not restricted, like the Debtors' Act of 1849, to debts contracted after any particular period;" but does decide, if not in terms, in effect, that the widow's claim could not prevail against judgments which were liens at the passage of the act. Neff's Appeal, 9 Harris 247, decides: "No statute is held to operate retroactively, unless its language admits of no other construction. There is nothing in the Act of 1850, whether construed by itself or in connection with the Act of 1849, which indicates an intention to impair the value of liens which existed before its enactment." The Act of 14th of April 1815 is clothed in the same language as the Act of 26th of April 1850, and therefore the same construction would

[Rishell v. Rishell.]

be given the former that the latter received.  In Gish & Henzey's Appeal, 7 Casey 277, it was held that debts contracted prior to the Act of 1850 were entitled to the fund in preference and to the exclusion of the widow.  And in Davis's Appeal, 10 Casey 257, it is said that "the Act of 1851 is to receive a construction similar to that given to the Act of 1849."  That act, by express provision, applies only to debts contracted on and after the 4th of July succeeding its passage.  Therefore the Act of 1851 applies only to debts contracted, or at least to judgments obtained after its passage.  It would be an infraction of that clause of the constitution which prohibits the impairing of contracts, to hold that the Act of 1851 divested the lien of the plaintiff's judgment.  She had a vested interest in the land by the law of her contract, which the legislature could not legally divest: 1 Kent 460, 471.  And it can make no difference whether she acquired that interest by the terms or the law of the contract: McCracken v. Hayward, 2 How. 613.

We agree that a general, as contradistinguished from a judgment creditor, would have no right to complain, in case of a deficiency of assets, if the widow's claim was preferred to his, because he trusted the person and not the property of his " debtor. A man who thus trusts to the general credit of his debtor has no right to complain if in case of a deficiency of assets he loses part of his debt, in consequence of the operation of a law intended for the public benefit:" Commonwealth v. Lewis, 6 Binn. 266.  But a judgment-creditor has a vested right to make his money out of a debtor's real estate, against which his judgment is a lien.  He has an inchoate interest in his debtor's land, which, by the law of his contract, vests in him immediately upon the entry of his lien, and any legislative enactment divesting that right or interest would be not only " manifestly unjust" but a clear infraction of the constitution : 1 Kent 466.

*Thomas White*, for defendants in error.—The principle of this case was decided in Baldy's Appeal, 4 Wright 381, and Hildebrand's Appeal, 3 Id. 133, in both of which cases it was ruled that "the widow of an insolvent decedent is entitled to retain the $300 allowed by the Acts of 1850 and 1851, as against the creditors of her deceased husband; in the first case against a creditor whose debt originated prior to 1849; and the second case against a mechanics' lien, filed in the lifetime of the husband." By the Act of 1851, this privilege is given to the widow as against all creditors, except the single exception of the purchase-money due upon the land which she desired to take.

This act may be said to repeal all statutes conferring liens. All our liens are the creatures of statute law, except in the solitary case indicated.  The Act of 1849 has no bearing upon

[Rishell *v.* Rishell.]

this case. All debts of decedent are general liens upon the property left by them, and in this case all that the plaintiff had was a general lien, as ruled in Commonwealth *v.* Lewis, 6 Binn. 266. There is no specific lien until actual seizure by levy : Brown *v.* Campbell, 1 Watts. But it matters not whether the lien be general or specific. It cannot debar the widow if it be not for purchase-money—a mechanics' lien is a specific lien, and that was postponed.

In this case there was no objection when the appraisement and setting off the land to the widow was made. The court decreed it to her, and the plaintiffs and all the other creditors are bound by that decree.

The opinion of the court was delivered, January 2d 1865, by

STRONG, J.—The main question in this case is, whether a widow's right to land set apart to her under the 5th section of the Act of April 14th 1851, with the approval of the Orphans' Court, is superior to the lien of a judgment against her husband obtained before the Act of Assembly was passed, and continued a lien until the husband's death. The pleadings show that the judgment of the plaintiff was recovered before the 14th of April 1851, against G. W. Rishell, the husband of the defendant, and that it was duly revived and continued a lien upon all his real estate until his death, which occurred in 1858. Subsequently the widow elected to retain a tract of fifty-six and three quarter acres, under the act allowing a widow to retain either real or personal property belonging to the estate of her deceased husband, to the value of $300. The land was appraised at the sum of $227, and the election and valuation were reported to the Orphans' Court and approved. Can the widow now hold the land divested of the lien of the judgment ?

That the Act of 1851 was intended to be prospective in its operation is plain, not only from its language but from the general rule that forbids statutes to be construed as retroacting, unless their words imperatively demand such a construction. There is no reason for the belief that the legislature intended to disturb any vested rights, nor indeed had they power to confer a benefit at the expense of any such rights. But the lien of a judgment upon a debtor's land is a vested right of the creditor, and when the judgment was recovered before the Act of April 14th 1851, it is a right vested before the widow of the debtor had acquired any right to his property either perfect or inchoate. It is true, that, unlike the debtor's "Execution Exemption" Act of 1849, the Act of 1851 does not expressly postpone the widow to the claims of creditors who were such prior to its passage ; but so far as such creditors had vested rights in the deceased husband's property, an express preservation of

[Rishell *v.* Rishell.]

them would have been superfluous. Whether a widow is entitled to claim property of her husband to the value of $300 in exclusion of general creditors, when the debts were contracted before the passage of the act, we are not called upon now to determine. It seems to have been intimated in Gish & Henzey's Appeal, 7 Casey 277, that she is not. It was not, however, so decided, and certainly a general creditor, without any lien, cannot be said to have any vested interest in his debtor's property. Baldy's Appeal, 4 Wright 328, determines this. But the position of a judgment-creditor is different, and it has been so ruled. In Neff's Appeal, 9 Harris 247, where the meaning of the Widow's Exemption Act of 1850 was under consideration, it was determined that there was nothing whatever in it, whether construed by itself or in connection with the Act of 1849, which indicated the slightest intention to impair the value of liens that existed before its enactment. If there was not in the Act of 1850, there is not in the Act of 1851, for there is no difference between the two acts, except that the latter applies to widows of all decedents, while the former embraced only the widows of such as died insolvent. The argument against the plaintiff in error attempted to be drawn from the proviso of the Act of 1851 must fail, for the same proviso was found in the Act of 1850. Regarding both acts as speaking prospectively, the liens for purchase-money saved, as also other liens not expressly saved, and therefore impliedly postponed, are such only as might be acquired after the passage of the act. All such, except those for purchase-money, would be subject, from their inception, to the superior rights of the widow, under the law in existence when the liens were acquired. No more than this was decided in Hildebrand's Appeal, 3 Wright 133. The mechanics' lien in that case originated in 1858. For this reason it was rightly held to be postponed to the claim of the widow for herself and her family. As was said in Spencer's Appeal, 3 Casey 218, the Act of 1851 is a restriction or qualification of any liens acquired by operation of law against a husband's estate, " *after the passage of the act,*" except so far as is excepted by the act. Baldy's Appeal, 4 Wright 328, decides only that the widow's exemption and right prevail over general creditors whose claims existed before the 14th of April 1851. It draws a distinction between general creditors and such as have liens upon the property of the decedent, and instead of being an authority to sustain the judgment of the court below in this case, it is in conflict with it. We hold then that the court erred in giving judgment on the demurrer for the widow, and thereby ruling that she holds the land discharged from the lien of the plaintiff's judgment.

It was faintly urged in the argument that the approval by the Orphans' Court of the appraisement made for the widow, con-

[Rishell *v.* Rishell.]

cluded the plaintiff, and that it now bars him from asserting his lien. Such is not our opinion. The approval of the appraisement involved no consideration of liens, and discharged none. Under the act a widow can take no right superior to that of her husband. She succeeds only to his property. If his title to that was imperfect, if his creditors had vested rights in the property, she must hold it as he did. The Orphans' Court has no authority to adjudge to her any greater rights than her husband had at his decease. The Act of Assembly sets apart for her real or personal property of the deceased husband, not exceeding in value $300; but this is rather a distribution than a change of tenure. The court is empowered only to approve the appraisement. It can therefore adjudicate nothing more.

The judgment is reversed, and judgment is given for the plaintiff on the demurrer.

AGNEW, J.—I agree to the judgment, but the operation of the approval of the Orphans' Court of the appraisement, &c., is not essential to the judgment of this court; and I am not prepared to say that the decree of approval is not binding on creditors as well as heirs and devisees.